## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**LAURA LATRIECE LUCKADUE**                                                    **PLAINTIFF**

**V.**                          **NO. 4:20CV00015 JM/PSH**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION[1]**                              **DEFENDANT**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Laura Latriece Luckadue, applied for disability benefits on November 25, 2015, alleging disability beginning on January 1, 2015.[2] (Tr. at 10).

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The relevant time-period for determination of benefits in this case is January 1, 2015 through July 9, 2018. (Tr. at 23).

The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Luckadue's claim. (Tr. at 23). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Luckadue has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.  <u>The Commissioner's Decision</u>:

The ALJ found that Ms. Luckadue had not engaged in substantial gainful activity since alleged onset date of January 1, 2015.[3]  (Tr. at 12). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Luckadue had the following severe impairments:  generalized anxiety disorder, major depressive disorder, borderline intellectual functioning, and bipolar II disorder. *Id.*

After finding that Ms. Luckadue's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Ms. Luckadue had the residual functional capacity ("RFC") to perform work at all exertional levels, with limitations. (Tr. at 16). The work must be limited to simple, routine, repetitive task jobs, with supervision that is simple, direct, and concrete (SVP 1 or 2 jobs that can be learned in 30 days). *Id.* The work must have no more than occasional changes to

---

[3] Ms. Luckadue worked during the relevant time-period, but the work did not rise to the level of substantial gainful activity. (Tr. at 12-13).

the workplace setting and there must be no interaction with the general public required in the work duties. *Id.*

The ALJ next found that Ms. Luckadue was unable to perform any of her past relevant work. (Tr. at 22). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Luckadue's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 22-23). Therefore, the ALJ found that Ms. Luckadue was not disabled. *Id.*

## III.   Discussion:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an

opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.   Ms. Luckadue's Arguments on Appeal

Ms. Luckadue contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not assign proper weight to the opinion of Jennifer Sisco, APN, and that the ALJ did not fully consider the chronic nature of Ms. Luckadue's mental impairments. After reviewing the record

as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Luckadue certainly suffered from mental impairments that affected her abilities to function in a workplace. She treated throughout the relevant time-period with mental health professionals. At times, she exhibited symptoms from anxiety, depression, hallucinations, and panic attacks, and she said that she had trouble getting along with coworkers and supervisors. (Tr. at 476-529). Ms. Luckadue was working at the time she applied for benefits; also, she testified at the hearing that she was working part-time at Olive Garden, and only had a "slight problem" getting along with coworkers there. (Tr. at 41-50, 296, 476-491). Ms. Luckadue explained that her mental problems caused her to be late to work on a regular basis, and that this made her unemployable. However, when she took her medication as prescribed, her anxiety and depression improved and she said she was not having as much trouble getting to work. (Tr. at 445-532).

Ms. Luckadue said she could not afford prescription Latuda due to the high price, but when she did take it, she felt better. (Tr. at 496-49, 520-523)). At a June 2016 therapy appointment, Ms. Luckadue was positive and laughed and smiled throughout the session. (Tr. at 446). She said Ativan helped her stay calm and focused. (Tr. at 406). Her doctor's notes from March 2016 showed she was gainfully employed as of that time. (Tr. at 406). By September 2017, Ms. Luckadue showed

positive change and had gotten a new job. (Tr. at 496). Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling conditions. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994). In 2018, Ms. Luckadue's therapist noted that she was easy to engage and interacted easily, but was focused on getting her disability. (Tr. at 502). The record reflects that a few traumatic events caused heightened stress and anxiety for Ms. Luckadue, but these were acute exacerbations, and medication and therapy mitigated her symptoms.

Ms. Luckadue said she could perform a variety of daily activities, like shopping, going to church, visiting with friends, and cooking with her sister. (Tr. at 42-55, 320-326). She could take care of her personal needs, take care of her dog, and watch TV. *Id*. Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995)

On Feb 16, 2016, Ms. Luckadue performed poorly on an IQ test administered by a consultative examiner. (Tr. at 394-399). But the examiner said that she was likely malingering and did not give her best effort during the evaluation. *Id*. He said that the tests results were invalid for this reason. *Id*.

Jennifer Sisco, APN, treated Ms. Luckadue from 2016 forward, and she filled out a medical source opinion on January 9, 2018. (Tr. at 465-466). The opinion was

on a checkbox form with little elaboration, but the ALJ gave some weight to the opinion. (Tr. at 20). Ms. Sisco said that Ms. Luckadue would be seriously limited, but not precluded, from maintaining a work schedule and having punctual attendance, completing a normal workday, performing at a consistent pace, and getting along with peers in a workplace setting. *Id*. She said Ms. Luckadue would miss work about three days per month. *Id*. In other areas of workplace functioning, Ms. Sisco found that Ms. Luckadue did not have serious problems. *Id*. The ALJ admitted that the opinion was based upon longitudinal treatment of Ms. Luckadue and thus, he gave it some weight (Tr. at 20); the opinion supported the RFC finding that Ms. Luckadue could perform simple, unskilled work. (Tr. at 16). The ALJ even added the more restrictive limitation to no more than occasional changes in the workplace, demonstrating that he credited Ms. Luckadue's subjective symptoms to a great degree. *Id*. Where an opinion is only partially consistent with other evidence in the record, an ALJ may give significant weight to some aspects of the opinion while discounting portions of the opinion that are not supported. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Moreover, the interpretation of a physician's findings is a factual matter left to the ALJ's authority. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). The ALJ fully discussed and incorporated Ms. Sisco's opinion, and he did not err in the weight he assigned to it.

Ms. Luckadue contends that the ALJ did not fully appreciate the nature of her mental illness, and that she was unable to work in spite of good progress in treatment. She asserts that mental illness is marked by periods of remission that result in an inability to work. Ms. Luckadue was often alert and engaged with her providers, did not have problems filling out her disability paperwork or communicating to the intelligence testing examiner, and was able to enjoy time with her family. In his opinion, the ALJ pointed to improvement when she was compliant with medications, as well as the situational nature of her anxiety (she struggled with the death of family members). (Tr. at 13-20). His analysis considered fully Ms. Luckadue's symptoms and her periods of remission, and showed he had a clear understanding of her mental illness. The record as a whole simply does not demonstrate that Ms. Luckadue was precluded from performing all work.

## VI.   **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Luckadue was not disabled. The ALJ gave appropriate weight to Ms. Sisco's opinion and properly considered all of the evidence of mental illness. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 18th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE